# United States Court of Appeals
## For the First Circuit

No. 10-1033

UNITED STATES OF AMERICA

Appellee,

v.

ANONYMOUS DEFENDANT,[*]

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Boudin, Selya and Stahl,
Circuit Judges.

Felicia H. Ellsworth, by appointment of the court, with whom Paul R.Q. Wolfson and Wilmer Cutler Pickering Hale and Dorr LLP, were on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom John P. Kacavas, United States Attorney, was on brief, for appellee.

December 22, 2010

---

[*]Because much of the record in this case remains under seal, we adhere to an arrangement to which the parties have agreed and refrain from disclosing the defendant's identity.

**SELYA**, **Circuit Judge**.  This appeal requires that we perform two separate but related tasks.  First, we must clarify the effect of United States v. Booker, 543 U.S. 220 (2005), on our pre-Booker case law that narrowly circumscribed the reviewability of sentencing courts' discretionary departure decisions.  Second, we must assess the bona fides of a sentence that the defendant claims is too harsh, even though it embodies a downward departure from the guideline sentencing range (GSR) based on substantial assistance to the authorities.

After careful consideration of these points, we conclude that we have jurisdiction to hear and determine this appeal; that the district court did not commit procedural error of any kind; that the sentence was sufficiently explained and fell within the universe of reasonable outcomes; and that, therefore, the sentence must stand.

## I.  BACKGROUND

The district court sentenced the defendant following a guilty plea.  Consequently, we glean the relevant facts from the presentence investigation report (PSI Report) and the transcript of the disposition hearing.  United States v. Fernández-Cabrera, 625 F.3d 48, 50 (1st Cir. 2010); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).  Because the linchpin of the appeal is the defendant's fruitful cooperation with the authorities, we describe his activities only in generalities.

In the summer of 2006, federal authorities arrested the defendant for drug trafficking and other illicit activities. Almost immediately, he began cooperating. His assistance included introductions to his quondam suppliers and providing corroborating evidence in several cases. These actions culminated in the apprehension and conviction of roughly a dozen participants in a gallimaufry of drug-trafficking operations.

The defendant's fruitful cooperation prompted the government to promise to move for a sentence reduction under a provision of the sentencing guidelines that authorizes downward departures based on substantial assistance to law enforcement agencies. See USSG §5K1.1 (reproduced in the Appendix).

With this assurance in hand, the defendant agreed to plead guilty to distributing and conspiring to distribute MDMA (ecstasy) and illicit gambling activities. See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 1955. On November 28, 2007, the district court took the plea but deferred action on it until the time of sentencing. The court nevertheless ordered the preparation of a presentence report. When received, the PSI Report recommended an offense level of 34, a criminal history category of VI, and a GSR at 262-300 months. The probation office explained that the top end of the proposed GSR would have been 327 months but for the combined statutory maximums for the offenses of conviction.

On December 19, 2008, the district court accepted the defendant's plea and convened the disposition hearing. The hearing itself lasted three days, spread out over many months.

A substantial assistance departure can be granted only if the government moves for one. See Wade v. United States, 504 U.S. 181, 184 (1992) (discussing USSG §5K1.1); United States v. Sandoval, 204 F.3d 283, 285 (1st Cir. 2000) (same). The government filed such a motion in the instant case. It sought a 13-level reduction in the defendant's offense level as a reward for his substantial assistance. Such a departure, if granted, would have reduced the GSR to 77-96 months, and the government supported a sentence at the bottom of this reconstituted range: 77 months. To bolster its importunings, the government proffered testimony of a Drug Enforcement Administration (DEA) agent who spoke to both the quality of the defendant's information and the investigative difficulties that the authorities would likely have encountered but for the defendant's cooperation. For his part, the defendant indicated that he would be satisfied with a departure of this magnitude.

The district court expressed openness to a sentence reduction but had reservations about how large the reduction should be. The court voiced a preference for a more modest departure — one that would yield a sentence on the order of 135 months.

During the discourse, the court learned of an assault charge pending against the defendant in a state court. The charge

stemmed from the defendant's involvement in a barroom brawl while he was free on bail in the federal case. The details of the altercation were disputed: state prosecutors apparently believed that the defendant was the instigator but defense counsel represented that his client was not at fault and that he expected the charge to be dismissed. Concerned by defense counsel's explanation, the district court mused that the rationale for a possible dismissal might have less to do with the defendant's innocence and more to do with the prospect of a lengthy federal sentence that would eclipse any state sentence. In the end, the court continued the disposition hearing to give the defense time to get the assault charge dismissed. The court advised counsel that it would be interested in whether any such dismissal was based on "evidentiary doubt rather than administrative convenience." Neither side objected to this continuance.

The district court reconvened the disposition hearing on April 2, 2009. Upon learning that no conclusive action had been taken on the assault charge, the court advised the parties that it would conduct its own inquiry into the matter.

On December 14, 2009, the hearing resumed. Without objection, the court took evidence to ascertain the defendant's role in the assault. Several witnesses testified, including the putative victim, the barkeep, and the defendant. The court concluded that the defendant was the aggressor and had instigated the fight.

Next, the court rejected the criminal history score proposed in the PSI Report. The newly calculated score lowered the defendant's criminal history category to IV. The court thereafter heard recapitulative arguments concerning the nature and value of the defendant's cooperation.

The government reiterated the reasons behind its stated preference for a 13-level downward departure and a 77-month sentence. The defendant joined in these exhortations, arguing that the factors relevant to a substantial assistance departure — known in this circuit as the Mariano factors, see United States v. Mariano, 983 F.2d 1150, 1156 (1st Cir. 1993) — favored an exceptional degree of leniency. When the parties had finished, the district court termed the defendant's cooperation "extremely valuable" and proceeded to grant a seven-level offense level reduction. In conjunction with the lowered criminal history category, this yielded a GSR of 100-125 months. The court then imposed a sentence of 120 months, citing the defendant's misconduct while on bail (the assault) as the reason for choosing a sentence near the upper end of the GSR. This timely appeal followed.

## II. ANALYSIS

The defendant, ably represented by appointed counsel, mounts a vigorous challenge to his sentence on both procedural and substantive grounds. Before grappling with this asseverational

array, however, we first must dispose of the government's jurisdictional objection.

These points evoke differing standards of review. The jurisdictional question turns on a purely legal point and, thus, engenders de novo review. United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007); United States v. Alegría, 192 F.3d 179, 191 (1st Cir. 1999). Our review of the defendant's attack on his sentence proceeds in two steps. We first must ensure that the district court committed no significant procedural error. See United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). If we determine that the sentence is "procedurally sound," we then must test its "substantive reasonableness." Id. Each of these two steps is conducted under the auspices of a "deferential abuse-of-discretion standard." Id. (quoting Gall v. United States, 552 U.S. 38, 41 (2007)). For this purpose, a material error of law constitutes a per se abuse of discretion. See United States v. Santiago-Rivera, 594 F.3d 82, 84 (1st Cir. 2010); United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998).

### A.  Appellate Jurisdiction.

In bygone days — when the federal sentencing guidelines were thought to comprise a mandatory sentencing regime — this court routinely held that discretionary departure decisions were not reviewable unless the sentencing court misunderstood its authority or committed an error of law. See, e.g., United States v. Dewire,

-7-

271 F.3d 333, 337 (1st Cir. 2001); United States v. Vaknin, 112 F.3d 579, 585 (1st Cir. 1997); United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994). This was a judge-made rule, not specifically required by any statute or guideline provision. See United States v. Pighetti, 898 F.2d 3, 4 (1st Cir. 1990); United States v. Ruiz-Garcia, 886 F.2d 474, 476-77 (1st Cir. 1989). The government insists that this judge-made rule bars review of the sentencing court's discretionary decision not to depart more generously.

Developments in the law have overtaken this argument. In 2005, the Supreme Court decided Booker, which recharacterized the federal sentencing guidelines as advisory. 543 U.S. at 245. As a by-product, the Court's decision obligates federal appellate courts to review appealed sentences for reasonableness. See id. at 261; United States v. Carrasco-de-Jesús, 589 F.3d 22, 26 (1st Cir. 2009). This obligation attaches regardless of whether a sentence adheres to or varies from the GSR. See United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006) ("We review sentences imposed under an advisory guidelines regime for reasonableness, regardless of whether they fall inside or outside the applicable GSR.").

Review for reasonableness is functionally equivalent to review for abuse of discretion. Carrasco-de-Jesús, 589 F.3d at 26 (citing Gall, 552 U.S. at 51). This review encompasses virtually the entire gamut of sentences imposed under the advisory guidelines,

including sentences shaped by discretionary departure decisions.[1]
See United States v. Fernández, 443 F.3d 19, 26 (2d Cir. 2006);
United States v. McBride, 434 F.3d 470, 477 (6th Cir. 2006); United
States v. Vaughn, 433 F.3d 917, 923-24 (7th Cir. 2006); see also
United States v. Plouffe, 445 F.3d 1126, 1130 (9th Cir. 2006)
(explaining in an analogous context that "prior precedent
restricting jurisdiction made sense when the Guidelines were
considered mandatory," but that it makes no sense "to so restrict
jurisdiction on appeal now that the Guidelines must be viewed . . .
as merely advisory").

In arguing for the perpetuation of our earlier judge-made
restriction on appellate jurisdiction, the government cites our
decision in United States v. Meléndez-Torres, 420 F.3d 45 (1st Cir.
2005). There, we indicated that, as a general rule, discretionary
departure decisions remain unreviewable in the post-Booker era. But
when Meléndez-Torres was written, Booker had just been decided and
its import had not been fully digested.

During the following year, we authoritatively clarified
the matter. In United States v. Jiménez-Beltre, 440 F.3d 514 (1st
Cir. 2006) (en banc), we addressed the issue of whether a sentence

---

[1] We say "virtually" because we exempt from this statement
sentences imposed pursuant to a statute that contains a mandatory
minimum term of imprisonment. We likewise exempt refusals to
depart in instances in which departure requires a government motion
that has not been forthcoming. There may be other exceptions, but
none is implicated here.

within a properly calculated GSR remained, as before Booker, "inherently unreviewable." Id. at 517. The government argued the affirmative of this proposition, based in part on an analogy to pre-Booker "case law governing review . . . of a refusal to depart." Id. (emphasis omitted). We rejected the government's proposition, concluding that Booker rendered it "hopeless." Id.

The logic of the en banc decision in Jiménez-Beltre must prevail here. Under that logic, all sentences imposed under the advisory guidelines (subject, however, to the exemption mentioned above, see supra note 1) are open to reasonableness review, including those that entail either a discretionary refusal to depart or a departure whose extent is contested. No other rule will satisfy what we have determined to be the Booker Court's mandate that all "sentences would be reviewable for reasonableness whether they fell within or without the guidelines." Jiménez-Beltre, 440 F.3d at 517; see also id. at 517 n.1.

This holding disposes of the government's jurisdictional objection. Where, as here, a departure sentence is subject to review for reasonableness under the advisory guidelines, the jurisdictional restriction limned in our pre-Booker cases is of no consequence. In following the dictates of Booker and deciding whether the imposed sentence is reasonable, the reviewing court, in effect, resolves any question as to whether the extent of the

departure is reasonable.  The authority to conduct that review is sufficient to confer jurisdiction here.

## B.  **Procedural Soundness**.

We turn now to the claim of procedural error.  The defendant complains that the sentencing court erred by (i) failing to cogitate the Mariano factors and (ii) delving too deeply into the background of the assault charge.  We consider these two claims separately.

**1.  The Mariano Factors**.  Both the decision to depart downward for substantial assistance and the related decision about the extent of the departure rest within the sound discretion of the sentencing court.  Mariano, 983 F.2d at 1156.  The so-called Mariano factors inform those decisions; in United States v. Ahlers, we summarized them:

> [T]he court's evaluation of the significance and usefulness of the defendant's assistance . . . ; the reliability of any information or testimony given by the defendant; the timeliness, nature, and extent of the assistance; and any danger to which the defendant or members of his family were exposed as a result of the assistance.

305 F.3d 54, 61 n.6 (1st Cir. 2002).

A sentencing court's discretion to assay these factors is wide, but not unbounded.  Although a sentencing court "must at a bare minimum indicate its cognizance" of the Mariano factors, Mariano, 983 F.2d at 1156, we have prescribed no particular formula for evaluating and explicating these factors.  In other words, a

-11-

sentencing court is not required to use any magic words or chant any special mantra to show that it has considered the five factors. See Vaknin, 112 F.3d at 585.

In this instance, the record shows with conspicuous clarity the sentencing court's awareness of the Mariano factors. During the first day of the disposition hearing, the court noted that it would "measure the [defendant's] cooperation" against the factors and inquired into the role that the defendant's cooperation had played in convicting other persons. The prosecutor confirmed that assistance rendered by the defendant was "significant, useful, truthful, complete and reliable," giving specific illustrations. The transcript makes manifest that the court not only recognized the salience of the Mariano factors but also understood the nature, timeliness, veracity, and value of the defendant's aid.

Having grasped the situation on the first day of the hearing, the court kept the defendant's assistance at the forefront. On the last day of the hearing, the court gave each side an opportunity to rehearse the case for a departure. This was done, in the court's words, to ensure that it "had in mind the nature of the defendant's cooperation." The parties availed themselves of this opportunity in full. Of particular pertinence for present purposes, the defendant walked the court through each of the five Mariano factors and argued for no less than a two-level downward departure referable to each one. It is, therefore, abundantly clear that the

Mariano factors were squarely before the court when it excogitated the extent of the departure.

To be sure, the court, in pronouncing sentence, could have expounded upon the Mariano factors one by one, welding each to the case at hand. But the law does not require such a level of specificity. Where, as here, the court's reasoning is easily inferred and there is nothing in the record to suggest that it overlooked any pertinent factor, the claim of procedural error is nothing more than hopeful speculation. Consequently, the claim lacks force. See, e.g., United States v. Mills, 329 F.3d 24, 32 (1st Cir. 2003); United States v. Torres, 251 F.3d 138, 148-49 (3d Cir. 2001); see also Mariano, 983 F.2d at 1156.

The defendant attempts to blunt the force of this reasoning by noting that the guidelines instruct sentencing courts to give substantial weight to "the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." USSG §5K1.1, cmt. n.3. The defendant says that the court strayed too far from the government's recommendation here.

We think, however, that the defendant overstates the effect of this directive. A substantial assistance departure begins with a government motion. Wade, 504 U.S. at 184. Once such a motion is filed, the government's assessment of the defendant's assistance deserves serious consideration. Withal, that assessment

-13-

is neither a proxy for the sentencing court's exercise of discretion nor a basis upon which the court can abdicate its responsibilities. See United States v. Burns, 577 F.3d 887, 893 (8th Cir. 2009) (en banc) (noting that "the government's recommendation is not controlling . . . and it is the district court's responsibility to determine an appropriate reduction") (citation and internal quotation marks omitted). The directive to give substantial weight to the government's evaluation was "never intended to rein in the district court's discretion concerning the need for, and extent of, a downward departure" under section 5K1.1. Mariano, 983 F.2d at 1156; see Vaknin, 112 F.3d at 585 (observing that "the sentencing judge's role cannot be usurped by agreements between the prosecutor and the defendant"). It follows inexorably that a court that chooses not to accept a prosecutor's recommendation in full cannot, for that reason alone, be deemed to have misweighed the Mariano factors.

2. **The Assault**. Next, the defendant assails the sentencing court's zealous attention to the assault charge. It was error, he asserts, for the court to look behind the face of the state-court record; and in any event, the lengthy evidentiary hearing resulted in a peripheral matter (the assault) overshadowing the central issue in the case (the defendant's substantial assistance).

This argument is unavailing. To begin, courts have long been permitted to consider more than charged conduct in fashioning sentences. See, e.g., United States v. Mays, 593 F.3d 603, 609-10 (7th Cir. 2010); United States v. Lombard, 102 F.3d 1, 4 (1st Cir. 1996). Moreover, a sentencing court is not bound by the face of a record in a different criminal proceeding; indeed, a sentencing court may even consider acquitted conduct, if proved by a preponderance of the evidence. See, e.g., United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam); United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006); see also United States v. Dorcely, 454 F.3d 366, 371 (D.C. Cir. 2006) (collecting cases). The sentencing guidelines themselves contemplate incorporating allegedly criminal conduct into the sentencing equation prior to any conviction. See, e.g., USSG §4A1.3(a)(1). Similarly, the case law allows sentencing courts to consider prior criminal conduct that has not ripened into a conviction. See, e.g., United States v. Diaz-Martínez, 71 F.3d 946, 952 (1st Cir. 1995); United States v. Diaz-Villafane, 874 F.2d 43, 50 (1st Cir. 1989).

The defendant notes that the assault is not "relevant conduct," USSG §1B1.3, but, rather, conduct unrelated to the offenses of conviction. That is true as far as it goes, but it does not take the defendant very far. The assault occurred while the defendant was free on bail for the offenses of conviction, and cases are legion in which sentencing courts have considered such conduct.

-15-

See, e.g., United States v. Fadayini, 28 F.3d 1236, 1242 (D.C. Cir. 1994); United States v. Doe, 18 F.3d 41, 47-48 (1st Cir. 1994) (Breyer, C.J.). It was, therefore, permissible for the court below to inquire into the conduct underlying the assault charge.

The defendant's related claim — that the emphasis on the assault charge overshadowed the merits of his substantial assistance — is unpersuasive. Because the defendant did not object below to the evidentiary hearing, this claim is at best reviewable for plain error. See, e.g., United States v. Jiminez, 498 F.3d 82, 85 (1st Cir. 2007); United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). There is no error here, plain or otherwise.

The decision to hold an evidentiary hearing at the time of sentencing rests within the sentencing court's discretion. United States v. Robles-Torres, 109 F.3d 83, 85 (1st Cir. 1997). Given that the assault charge arose out of acts committed while the defendant was free on bail, there was no abuse of discretion in deciding to inquire into them.

In contending otherwise, the defendant misreads our decision in United States v. Mateo, 271 F.3d 11 (1st Cir. 2001). There, we held that a district court "ordinarily is not required to look beyond the face of the state-court record" in deciding how to factor a state charge into the federal sentencing equation. Id. at 16. But "not required" and "not permitted" are two very different things.

Proceeding to the substance of the defendant's argument, nothing in the record supports a finding that the attention paid to the assault charge drove other issues into obscurity. The information about substantial assistance plainly remained front and center. There is not so much as a hint that the assault charge came to dominate the court's thinking.

This lack of dominance is made quite clear by the sentencing court's limited use of the assault charge. The assault played only a minor part in shaping the defendant's sentence. It was not used to elevate the defendant's offense level, enhance his criminal history score, discount his substantial assistance, or circumscribe the extent of the downward departure. Instead, it came into play only after the court effected the departure by shaping a new GSR. Only then did the court use the assaultative conduct for the narrow purpose of fixing a sentencing point within that newly constituted range. This small adjustment was comfortably within the court's discretion.

## C. **Substantive Reasonableness**.

This brings us to the defendant's claim that his sentence is substantively unreasonable. He maintains that the sentence does not accord sufficient weight to the factors enumerated in 18 U.S.C.

§ 3553(a).[2] He singles out his history and characteristics, and the need for the sentence to provide just punishment.

Determining the extent of a discretionary departure is quintessentially a judgment call. "[A] sentencing court's ultimate responsibility is to articulate a plausible rationale and arrive at a sensible result." Carrasco-de-Jesús, 589 F.3d at 30.

We already have found that the sentencing court appropriately considered the five Mariano factors. See supra Part II(B)(1). Those factors to some extent inform the broader panoply of factors limned in 18 U.S.C. § 3553(a). As to the remaining statutory factors, the defendant's argument that the court misweighed them is little more than a lament that the defendant would weigh them differently. But it is the court, not the parties, that holds the scales in gauging the extent of discretionary departure decisions. After all, the sentencing court may choose to curtail the extent of a substantial assistance departure based on factors other than the Mariano factors. See Mariano, 983 F.2d at

---

[2] Pertinently, these factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records . . . .

18 U.S.C. § 3553(a).

-18-

1157; see also United States v. McFarlane, 309 F.3d 510, 515 (8th Cir. 2002).

The district court relied on such factors here. It supportably found the defendant to be a "major drug dealer [who] made a ton of money" from trafficking in controlled substances. Taking these facts into account to cabin the extent of the departure fits neatly within the encincture of judicial discretion.

In the last analysis, the sentencing court articulated specific and cogent reasons for truncating the extent of the departure. The court exhibited a similar degree of care in fashioning the sentence. Citing considerations favorable to the defendant, it reduced his criminal history category from VI to IV.[3] The court also acknowledged the applicable value of the defendant's assistance to the government and reduced his offense level dramatically. It then explained the main reasons why it departed less handsomely than the parties had requested: the seriousness of the criminal enterprise and the leading role that the defendant played in it. The court considered whether a departure of the magnitude that it envisioned would send the right message to other potential cooperators and concluded that it would. Finally, the

---

[3] To the extent that the defendant argues that the career offender designation (which accounted for his original placement in criminal history category VI) artificially inflated his sentence, that ship has sailed. Having failed to object below either to the PSI Report or to the court's use of category VI as a starting point, he cannot lodge such an objection for the first time on appeal. See Turbides-Leonardo, 468 F.3d at 38.

court determined that placing the defendant near the top of the reconstituted GSR was warranted by his commission of an assault while released on bail.

Sentencing under an advisory guidelines regime is more art than science. A sentencing judge must weigh a variety of considerations, filter them through his real-world experience and his unique perspective on the case, and formulate a sentence that is responsive to the facts. There is normally no single appropriate sentence but, rather, a range of reasonable sentencing options. Martin, 520 F.3d at 92; United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006). Here, the district court sufficiently weighed the history and characteristics of both the offense and the offender. Its sentencing rationale was plausible and the sentence was within the universe of acceptable outcomes. The sentence is, therefore, substantively reasonable. See United States v. Bunchan, ___ F.3d ___, ___ (1st Cir. 2010) [No. 09-2144, slip op. at 13]; Carrasco-de-Jesús, 589 F.3d at 30.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we reject the defendant's claims of sentencing error.

---

**Affirmed**.

## **Appendix**

§ 5K1.1. Substantial Assistance to Authorities (Policy Statement)

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

USSG §5K1.1.