# United States Court of Appeals
## For the First Circuit

No. 10-1058

UNITED STATES OF AMERICA,

Appellee,

v.

MALDEN O. BATTLE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Jon R. Maddox, by Appointment of the Court, for appellant.
Kelly Begg Lawrence, Assistant U.S. Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

March 3, 2011

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL, Circuit Judge**. Defendant-appellant Malden O. Battle was charged with two counts of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1) and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Battle moved to suppress the evidence supporting the charges, which was seized pursuant to a warrantless entry into the apartment of his ex-girlfriend and a subsequent search occurring after a warrant was obtained. After a two-day evidentiary hearing, the district court denied the motion. Thereafter, Battle entered a guilty plea, reserving his right to appeal the denial of his motion to suppress. He was then sentenced to a seventy-six month term of imprisonment followed by three years' supervised release. Battle instituted the instant appeal based on his reserved challenge and the sentence imposed by the district court. We affirm.

## I. Background

In reviewing the denial of a motion to suppress, we recount the facts "'as the trial court found them, consistent with record support.'" United States v. Andrade, 551 F.3d 103, 106 (1st Cir. 2008) (quoting United States v. Lee, 317 F.3d 26, 30 (1st Cir. 2003)).

On August 21, 2004, Odemira Rosa visited the Dorchester, Massachusetts apartment of his sometime girlfriend, Helena Fonseca. Rosa is the father of Fonseca's son, and although he lived

elsewhere, he paid the rent for Fonseca's apartment, had his own key, enjoyed unlimited access to the unit, and spent significant time there. In the summer of 2004, Rosa and Fonseca were on a break in their relationship, and Fonseca and Battle briefly became involved romantically. Battle would occasionally stay with Fonseca, which was the case on August 21, when Rosa visited the apartment and discovered Battle and Fonseca together inside. Upon Rosa's entry, Battle confronted Rosa with a gun, and Rosa quickly left the apartment.

This armed encounter precipitated the end of the one-month relationship between Battle and Fonseca, and Fonseca told Battle to leave her house and not come back. Battle, however, continued to call Fonseca, which frightened her, and so Fonseca and her children temporarily moved in with Rosa.

On September 1, 2004, Rosa visited Fonseca's apartment to ensure that Battle had vacated the premises. Although Rosa did not find Battle at the apartment, he did discover various items belonging to Battle, including a gun in a black bag in the closet.

The following morning, on September 2, 2004, Rosa went to the Dorchester police station and told Police Officer John Teixeira and Sergeant Detective Paul Donovan about the August 21 incident and the discovery of the gun in the closet. Rosa explained to the officers that although the apartment was in Fonseca's name, Rosa paid the rent and had a key and unlimited access to it.

The police accepted Rosa's invitation to visit the apartment, and at approximately 10:30 a.m., Rosa brought Donovan, Teixeira, and six other officers to Fonseca's building. He used his key to usher them inside and waited one floor below Fonseca's unit while the police knocked on the apartment door. Battle opened the door and stepped out into the hallway, claiming that he had his girlfriend's permission to be present. Some officers entered the apartment and conducted a "protective sweep," but they found nothing. Battle called Fonseca, and when he told her that the police were in her apartment she asked, "What are you doing at my house? I don't want you at my house . . . . I didn't tell you you could go to my house." The officers instructed Fonseca to return home.

The officers and Battle then entered the apartment. One officer read Battle his Miranda rights while Battle sat on the living room couch. Battle identified himself and told the officers that he was in the process of moving out. After he called his attorney, he stated that he did not want to answer any more questions. The officers ceased questioning Battle, but they asked him to leave the apartment so that they could "freeze" it while they obtained a search warrant.

As Battle stood up from the couch to leave, an officer noticed and retrieved a gun located on the floor beneath the couch. When Fonseca arrived back at the apartment, she identified the gun

-4-

as belonging to Battle, having seen him with the weapon on prior occasions. The police then arrested Battle and brought him to the station.

Later that day, the officers obtained a search warrant using an affidavit that referenced the gun found underneath the couch. After searching the apartment and Battle's car, the officers discovered another gun, ballistics vests, boxes of ammunition, a bag containing three small bags of cocaine, $2982 in U.S. currency, various clothes, Battle's personal papers and photographs, and receipts in both Battle's and Fonseca's names.

Battle moved to suppress all of the items seized from the apartment and car, and the district court denied the motion. It held that Battle did not have a legitimate expectation of privacy in Fonseca's apartment and therefore lacked standing[1] to invoke the Fourth Amendment's protections. It also held that even if Battle could assert his claim, the claim failed because the police obtained valid third-party consent from Rosa to enter the apartment, and the discovery of the gun, which led to the discovery

---

[1]"'It is well-settled that a defendant who fails to demonstrate a legitimate expectation of privacy in the area searched or the item seized will not have 'standing' to claim that an illegal search or seizure occurred.'" United States v. Rheault, 561 F.3d 55, 58 n.8 (1st Cir. 2009) (quoting United States v. Vilches-Navarrete, 523 F.3d 1, 13 (1st Cir. 2008)). We acknowledge, however, that this threshold inquiry is "more properly placed within the purview of substantive Fourth Amendment law than within that of standing." Rakas v. Illinois, 439 U.S. 128, 140 (1978); Rheault, 561 F.3d at 58 n.8; see also United States v. Rodriguez-Lozada, 558 F.3d 29, 37 (1st Cir. 2009).

of the other items seized, was justified by the "plain view" doctrine.

Battle pled guilty to the indictment and was sentenced to seventy-six months' imprisonment followed by three years' supervised release. The district court calculated the sentence based on a total offense level of twenty-one and a criminal history category of V, which under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") provided for a seventy to eighty-seven month prison term.

## II. Analysis

### A. Motion to Suppress

In reviewing a motion to suppress, we review legal determinations de novo and findings of fact and credibility determinations for clear error. United States v. Dubose, 579 F.3d 117, 120 (1st Cir. 2009) (citing Andrade, 551 F.3d at 109). We will uphold the denial of a motion to suppress as long as any reasonable view of the evidence supports it. United States v. Gonzalez, 609 F.3d 13, 18 (1st Cir. 2010).

Battle contends that he had a legitimate expectation of privacy in Fonseca's apartment enabling him to assert his Fourth Amendment challenge, and that his rights were violated as a result of the warrantless entry that led to the seizure of evidence. He claims that his expectation of privacy was reasonable because of

-6-

his prior relationship with Fonseca.[2]  As to the warrantless entry, he argues that Rosa did not have actual or implied authority to consent to the police entry, that any implied consent was trumped by Battle's actual refusal to consent, and that the gun found underneath the couch was not in plain view.  He claims, therefore, that the seizure of the gun was unlawful and that the subsequent items found were inadmissible.

We dispose of Battle's Fourth Amendment challenge because we find he lacked a legitimate expectation of privacy to assert it. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  To prevail on a claim that a search or seizure violated the Fourth Amendment, a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched.  Minnesota v. Olson, 495 U.S. 91, 95 (1990).  The inquiry involves a two-part test: first, whether the defendant had

---

[2]In his appellate brief, Battle also asserted that he has standing to challenge the evidence seized pursuant to Article 14 of the Massachusetts Declaration of Rights, the Commonwealth's analog to the Fourth Amendment.  Massachusetts has interpreted this provision to provide a defendant with automatic standing to contest the legality of a search and seizure when a defendant is charged with a crime in which possession of the seized evidence at the time of the search is an essential element of guilt.  Commonwealth v. Frazier, 571 N.E.2d 1356, 1360-61 (Mass. 1991).  Although the Massachusetts state constitution grants automatic standing, the Supreme Court abandoned the principle for Fourth Amendment purposes.  United States v. Salvucci, 448 U.S. 83 (1980).  Battle withdrew his automatic standing claim at oral argument.

an actual, subjective, expectation of privacy; and second, whether that expectation "is one that society is prepared to recognize as objectively reasonable." United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (citing Smith v. Maryland, 442 U.S. 735, 740-41 (1979)).

A defendant may have a legally sufficient interest in a place other than his own home, such as in the home of a host who welcomes the defendant as an overnight guest. Olson, 495 U.S. at 98-100. A defendant lacks a legitimate expectation of privacy in a place, however, when he does not have permission to be present. See United States v. McCarthy, 77 F.3d 522, 535 (1st Cir. 1996) (finding no legitimate expectation of privacy because defendant left items in a trailer after the trailer's owner told defendant to leave); United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987) (finding no legitimate expectation of privacy in hotel room after hotel guest failed to pay room bill), cited with approval in McCarthy, 77 F.3d at 535; see also United States v. Lnu, 544 F.3d 361, 366 (1st Cir. 2008) (finding no legitimate expectation of privacy in storage locker because defendant failed to pay rent and facility operator had removed lock and imposed a lien on contents); United States v. Melucci, 888 F.2d 200, 202 (1st Cir. 1989) (finding no legitimate expectation of privacy in storage locker because defendant failed to pay rent and facility operator removed lock); cf. Olson, 495 U.S. at 99 (commenting that an overnight

guest may have a legitimate expectation of privacy because "[t]he houseguest is there with the permission of his host, who is willing to share his house and his privacy with his guest").

Here, although Battle may have exhibited a subjective expectation of privacy in Fonseca's apartment, that expectation was objectively unreasonable because Battle did not have permission to be present. The district court found that on August 21, 2004, after the armed encounter with Rosa, Fonseca told Battle to leave her apartment and not come back. On September 2, 2004, when Battle called Fonseca and told her that the police were in her apartment, she asked Battle what he was doing at her house since he did not have permission to be there. On the day of the search, Battle was no longer a welcomed guest in Fonseca's apartment, but instead was a trespasser who stayed beyond his permitted visit. As such, he no longer had a legally sufficient interest in the apartment to mount a Fourth Amendment challenge.

Battle does not contest that Fonseca revoked his permission to be present, but he urges that "a lover sent packing is entitled to a somewhat longer checkout time." He claims that because he still had personal items in the unit and was in the process of moving out, Fonseca's revocation twelve days prior to the search was not immediately effective. We do not understand this to be a reasonable expectation of privacy that society is prepared to recognize. The facts demonstrate that Battle had been

at most an occasional overnight guest during his one-month relationship with Fonseca, Fonseca clearly told Battle to vacate her home, and Fonseca feared Battle's return to the point where she temporarily moved out of her apartment. Such circumstances demonstrate that any subjective expectation of privacy that Battle believed he had was objectively unreasonable. Cf. Rheault, 561 F.3d at 61 (affirming denial of motion to suppress because defendant's subjective expectation was unreasonable).

Battle also highlights that during his month-long relationship with Fonseca he had a key and at times stayed at her apartment, he kept personal items at her place, and he contributed to her subsidized rent. Such facts were not found by the district court and are unsupported by the record, which demonstrates that Battle was lent a key once, never moved into the apartment, was to take his belongings with him each time he left, and was repaid the $100 borrowed for rent. Further, to the extent that Battle enjoyed certain privileges while he dated Fonseca, those privileges were revoked on August 21, 2004, twelve days prior to the search, when Fonseca ordered Battle out of her home. Without a legitimate expectation of privacy in the apartment, Battle's Fourth Amendment claim fails.

## B. Sentencing

Battle argues next that his sentence of seventy-six

months' imprisonment is unreasonable.[3] The pre-sentence report, to which neither side objected, calculated Battle's Guidelines range to be seventy to eighty-seven months based on a total offense level of twenty-one and a criminal history category of V. Criminal history category V embraces defendants with ten to twelve criminal history points, and Battle scored an eleven. Battle's points were based on prior convictions for: (1) possession of marijuana (one point), (2) possession of crack cocaine (two points), (3) domestic assault and battery (two points), and (4) felon in possession of a firearm (three points). The pre-sentence report added two points because the instant offenses were committed while Battle was on supervised release for the prior firearm offense, and one more point because the offenses were committed less than two years after Battle's release from imprisonment. See U.S.S.G. § 4A1.1(d), (e).

On appeal, Battle argues that the district court should have departed downward from the Guidelines range pursuant to U.S.S.G. § 4A1.3(b)(1), which allows for a downward departure if a defendant's criminal history category significantly over-represents

_____

[3]At Battle's sentencing, the district court sentenced Battle both on his instant offenses and for the derivative offense of violating the terms of his supervised release; he had been subsequently charged with the supervised release violation. Battle stipulated that he violated the terms of his supervised release by committing the instant offenses and agreed to an aggregate sentence for both matters. The district court sentenced Battle to seventy-six months' imprisonment for each of the instant offenses, to run concurrently, and time served on the supervised release violation. The supervised release violation is not at issue on appeal.

the seriousness of his criminal history.[4]  He states that the one point assigned to his marijuana offense was in error, and that the district court should have found excessive the two points for his cocaine conviction because it occurred over twelve years earlier. The subtraction of these three criminal history points would position Battle in criminal history category IV, providing a range of fifty-seven to seventy-one months.  Battle also attacks the substantive reasonableness of his sentence, arguing that the sentence failed to adequately account for his troubled personal circumstances and his overstated criminal history, and that had the one point for the marijuana offense been omitted, the district court would have been more sympathetic to his claim for leniency.

This court reviews the reasonableness of a sentence "under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007).  We determine first whether the district court made any procedural errors, "'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

---

[4]United States Sentencing Guideline § 4A1.3(b)(1) reads: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

-12-

sentence - including an explanation for any deviation from the Guidelines range.'" United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008) (internal marks omitted) (quoting Gall, 552 U.S. at 51). Next we evaluate the substantive reasonableness of the sentence imposed. Id. We consider the totality of the circumstances and give due deference to the district court. See Gall, 552 U.S. at 51; United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009). Although we evaluate the reasonableness of a sentence even when it falls within the Guidelines, "a defendant who attempts to brand a within-the-range sentence as unreasonable must carry a heavy burden." United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006). A sentence will stand so long as there is "a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

Here, the sentence is both procedurally and substantively sound. First, Battle's argument concerning the criminal history point for the marijuana offense is a dead end. The government posits that the court should review this claim for plain error because it was not presented to the district court.[5] No matter

[5]At the district court level, Battle admitted to the correctness of the pre-sentence report and argued only that he should be granted a downward departure and placed in criminal history category IV on equitable grounds. On appeal, Battle makes a different argument, asserting that the point inclusion for the marijuana offense was a calculation error under U.S.S.G. § 4A1.2(c)(2), which states that sentences for specified prior offenses "and offenses similar to them . . . are never counted" for purposes of criminal history. Listed noncountable

-13-

what level of review we accord this claim, however, it fails. Battle scored eleven criminal history points, and the subtraction of the one point would not have altered his criminal history category, which applies to defendants with ten to twelve criminal history points. Accordingly, Battle's Guidelines range would be unchanged, and any potential error was harmless. See United States v. Gerhard, 615 F.3d 7, 34 (1st Cir. 2010) (bypassing merits of sentencing calculation claim because any error would not impact the Guidelines range); United States v. Caldwell, 358 F.3d 138, 143 (1st Cir. 2004) (rejecting defendant's claim that he was improperly scored an extra criminal history point because "any error in the district court's calculation . . . was harmless"); see also United States v. Matos, 611 F.3d 31, 40 (1st Cir. 2010) (applying plain error review to claim that district court erred in calculating criminal history points because defendant argued to the district court only that the criminal history category generally overstated the seriousness of his past); United States v. Rivera, 448 F.3d 82, 86 n.1 (1st Cir. 2006) (applying plain error review to unpreserved calculation error claim and finding error harmless because any error would not affect the sentencing range).

As to Battle's broader challenge that the district court

prior offenses include local ordinance violations and public intoxication. U.S.S.G. § 4A1.2(c)(2). Battle argues that his marijuana offense is similar to these two noncountable offenses because Massachusetts has since decriminalized possession of small amounts of marijuana.

should have granted a downward departure in view of the marijuana and cocaine offenses, we reject it.  A district court's discretionary decision not to depart from the Guidelines is reviewed for reasonableness.  <u>United States</u> v. <u>Anonymous</u>, 629 F.3d 68, 73-75 (1st Cir. 2010).[6]  Here, the district court met the standard.  It considered Battle's arguments but explained that a departure was unwarranted because of Battle's criminal history, the seriousness of his offenses, and the timing of their occurrence, having been committed shortly after Battle was released from custody.  We find no abuse of discretion.

Lastly, the seventy-six-month sentence is substantively reasonable.  Although Battle argues that the district court did not adequately account for his troubled childhood or overstated criminal history, the record belies his claim.  The district court specifically acknowledged Battle's personal circumstances.  It noted his difficult past, applauded his current support system, and

---

[6]Citing <u>United States</u> v. <u>Meléndez-Torres</u>, 420 F.3d 45, 50 (1st Cir. 2005), the government argues that a district court's discretionary refusal to depart is unreviewable unless the district court based its decision on an error of law or a determination that it lacked authority to depart.  We recently clarified, however, that our decision in <u>Meléndez-Torres</u> did not give full effect to <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005), which obligates federal appellate courts to review sentences for reasonableness. <u>Anonymous</u>, 629 F.3d at 73-75.  In <u>United States</u> v. <u>Anonymous</u>, we held that virtually "all sentences imposed under the advisory guidelines . . . are open to reasonableness review, including those that entail either a discretionary refusal to depart or a departure whose extent is contested." <u>Id.</u> at 74.  We therefore review for reasonableness the district court's decision not to depart from the Guidelines.

recognized his promise to learn from his mistakes. It found the sentence a way "to push the reset button and start again," which it believed Battle would be able to do. The district court stated that since Battle had already served sixty-three months and would be credited several additional months for good behavior, a shorter sentence would not provide him with the time he needed to prepare for release. With this in mind, it explained that Battle would serve the first six months of his supervised release at a re-entry center that would help him gain employment, find a place to live, and receive any necessary treatment.

As to Battle's urge for leniency due to his allegedly overstated criminal history, the court considered this possibility and rejected it. It specifically commented that Battle may have scored one point too high due to the marijuana offense, but remarked that "really the criminal history is for all inten[ts] and purposes the same if I took that out." It also explained that the points assigned to Battle's prior gun offense, including the points added because Battle had recently been in custody and was on supervised release for that crime when the instant offenses occurred, were not excessive in view of Battle's history with the criminal justice system and the similarity of the prior offense to the current ones. Overall, the court clearly articulated a plausible explanation for its within-the-Guidelines sentence and provided a defensible result.

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> the district court's denial of Battle's motion to suppress and its sentencing decision.

<u>So ordered</u>.