```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF PUERTO RICO
```

Francisco J. Reyes Caparrós

    v.                              Civil No. 3:15-cv-2229-JL
                                       Opinion No. 2018 DNH 093P

Jefferson Beauregard Sessions, III
Attorney General of the United States


## MEMORANDUM ORDER

Plaintiff Francisco J. Reyes Caparrós brings a single claim under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e-16, alleging that the United States Attorney's Office for the District of Puerto Rico retaliated against him for engaging in protected activity between 2012 and his resignation in 2015.  Before the court are the parties' several motions in limine seeking to exclude a variety of evidence and areas of inquiry from the upcoming trial.  The court addresses each motion in turn.

The court reminds the parties that these rulings are made without prejudice to revisiting particular issues in response to circumstances that might arise during trial.  Furthermore, these rulings are limited to grounds argued in the parties' filings and raised at the final pretrial conference.  The court reserves the right to assess other factors at trial, such as hearsay, authenticity, and best evidence, see Fed. R. Evid. 800 et seq.,

900 et seq., and 1000 et seq., and where appropriate, arguments and grounds not raised by counsel.

## I.  Plaintiff's motions

### A.  Plaintiff's motion in limine[1]

Reyes moves to exclude two categories of evidence on the basis that it was not timely disclosed.  A party must disclose "the name . . . of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses" and "all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," unless the witness or information "would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  A party who fails to make such a disclosure "is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Id. Rule 37(c)(1).  As the plaintiff acknowledges, this "preclusion is not a strictly mechanical exercise; district courts have some discretion in deciding whether or not to impose that onerous sanction."[2]

---

[1] Document no. 122.

[2] Plaintiff's Mot. in Limine (doc. no. 122) at 3-4.

2

Santiago-Díaz v. Laboratorio Clínico, 456 F.3d 272, 276 (1st Cir. 2006).

**Documents.** First, Reyes seeks to exclude the documents identified at entries 203-245 and 249-251 of the defendant's exhibit list, which the defendant produced to the plaintiff on August 25, 2017, after the close of discovery in this case. Both the character of the evidence and intervening circumstances weigh against exclusion on this basis, however.

The defendant characterizes the majority of these exhibits as documents that "pertain solely to damages," which it offers "to meet its burden of proving Plaintiff's failure to mitigate and to establish Plaintiff's post-resignation earnings for purposes of obtaining an offset against any damages award in this case."[3] Specifically, they include newspaper classifieds, YouTube videos posted by the plaintiff after his resignation, his LinkedIn profiles and the Facebook page of a law firm where he worked after his resignation, and information concerning lawyers' salaries in Puerto Rico.[4] The only non-public-facing documents appear to be human resource documents concerning his resignation and his salary at that time.[5] Many of these

---

[3] Defendant's Obj. (doc. no. 141) at 2.

[4] Id. at 2-3.

[5] Id. at 2.

documents were available to the plaintiff during the discovery period because they were (1) publicly available and relevant to his case, or, more particularly, (2) created by him.

Of course, a party's duty to produce documents under Rule 26 is not abrogated by the documents' public availability. In this case, however, it appears that the plaintiff could not only have obtained many of these documents independently (in part, at least, because he created them), but also that he never issued requests for production that would encompass them.[6]  Nor has he identified any witness he would have deposed had the documents been produced sooner, or any other specific prejudice he may face at trial as a result of their late production, beyond any general prejudice introduced by that late production.

That general prejudice plays less of a role here in light of the circumstances intervening between the defendant's production and the impending trial.  Trial in this action was originally scheduled for September 18, 2017.  Had it taken place as scheduled, the plaintiff and his counsel would have been afforded a relatively (albeit not impossibly) short time to review and address the documents produced on August 25.  As it stands, however, the impact on Puerto Rico of a series of hurricanes that season necessitated continuing the trial for

---

[6] Id. at 6.

nearly nine months.  The court acknowledges, in light of a lack of electricity and internet connectivity, that plaintiff's counsel has not had consistent access to trial-related materials during that time.  The plaintiff has nevertheless had ample opportunity to adapt his trial preparation strategy and tactics to account for these documents, or to ask for an opportunity to conduct additional discovery.  He has made no such request.  The plaintiff's motion to exclude these documents due to their late production is therefore denied.

While the court is thus disinclined to exclude these documents on timeliness grounds, to the extent the documents are (as the defendant represents) relevant only to the plaintiff's claims for front and back pay, and his mitigation of those damages, they may be excluded from trial on relevance grounds. See Fed. R. Evid. 401.  As discussed more fully infra Part II.D, to the extent such damages may be available to the plaintiff in equity, and should he prevail at trial, the court will reserve those issues for a post-trial damages hearing.

**Witnesses**.  Second, Reyes seeks to preclude ten of the defendant's 29 proposed witnesses from testifying because they were not identified as potential witnesses in the defendant's disclosures under Rule 26.  As discussed supra, a party has a duty to disclose "each individual likely to have discoverable information" during the discovery period, Fed. R. Civ.

P. 26(a)(1)(A)(i), and to supplement those disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties . . . ." Id. Rule 26(e)(1)(A). At the same time, "Federal Rule of Civil Procedure 26(e) exempts a party from the supplementation requirement where 'the additional or corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing.'" Pina v. Children's Place, 740 F.3d 785, 793 (1st Cir. 2014) (quoting Fed. R. Civ. P. 26(e)(1)).

As the defendant points out, though the defendant's initial disclosures were not supplemented to reflect their possession of relevant knowledge, Reyes concedes that nine of these witnesses were disclosed during the course of discovery.[7] Three of these witnesses -- two FBI Special Agents, Joe Rodríguez and Carlos Cases, and one agent of the Office of the Inspector General, James Kirdar -- interviewed Reyes and/or were otherwise involved in the investigation surrounding his proposed trip to Russia. Reyes discussed the roles of all three during his deposition,

---

[7] See Plaintiff's Mot. in Limine (doc. no. 122) at 2; Defendant's Obj. (doc. no. 141) at 7.

and further indicates his intent to depose Rodríguez.[8]  Reyes knew six others (Victor Acevedo, Luke Cass, Evelyn Canals, Pedro Espinal, Normary Figueora, and Jose Ruiz) because they (1) worked in the same United States Attorney's Office as him, and (2) provided information to him with respect to the firearms initiative that he worked on in late 2013 and early 2014. Though the defendant perhaps ought to have identified these witnesses during the discovery process, the court denies the plaintiff's motion to exclude them on that basis because the identities of these witnesses were either known to Reyes or made known to him during the discovery process.

The sole witnesses unknown to the plaintiff before the defendant produced its witness list is Xiomara Colón-Rodríguez. The defendant indicates that she will testify as "a foundational witness, analogous to a custodian of records," to authenticate certain of the documents discussed <u>supra</u>.[9]  Other courts have allowed such witnesses to testify to authenticate documents without disclosure under Rule 26.  See, e.g., Guerrero, 2008 WL 926566, at *1; Smith v. Loudoun Cty. Pub. Sch., No. 1:15CV956, 2016 WL 9943214, at *2 (E.D. Va. Jan. 21, 2016).  Under the

---

[8] Defendant's Obj. (doc. no. 141) at 8.

[9] Defendant's Obj. (doc. no. 141) at 9 (quoting Guerrero v. Gen. Motors Corp., No. CVF061539, 2008 WL 926566, at *1 (E.D. Cal. Apr. 4, 2008)).

7

circumstances present here, and to the extent that any of these documents may be introduced in light of the court's other rulings in this order, see supra Part I.A (documents), infra Part II.D, this court does likewise.

**Cumulative testimony.** In addition to timeliness, the plaintiff moves to exclude the testimony of the six witnesses, all Assistant United States Attorneys, as unnecessarily cumulative of the testimony of three other witnesses who were disclosed, as well as documentary evidence.[10] While the court is skeptical that 29 witnesses are necessary to present the defendant's case during a trial on a single Title VII claim, as with the plaintiff's proposed witnesses, discussed infra Part II.A.2, it declines to exclude the testimony of these witnesses as cumulative at this pre-trial stage. Should these witnesses' testimony appear cumulative as presented, see Fed. R. Evid. 403, Reyes may renew his motion, and the court may exclude one or more of the witnesses sua sponte in order to increase judicial efficiency and avoid wasting time. See id.; Fed. R. Evid. 611(a).

---

[10] Plaintiff's Mot. in Limine (doc. no. 122) at 2-3.

**B. Motion to quash subpoenas[11]**

The plaintiff moved to quash nine subpoenas that the defendant issued to a variety of airlines seeking "a flight manifest, for any flight Francisco. J. Reyes Caparrós . . . may have taken . . . between San Juan, Puerto Rico and any airport in Florida on October 9th, 10th and/or 11th, 2014."[12] The defendant served these subpoenas on September 15, 2017, three days before trial in this action was originally scheduled to commence, and well after the discovery deadline. Reyes objects and seeks to quash these subpoenas on the ground that they "are an improper attempt to use trial subpoenas as a discovery device at the eve of trial."[13]

This court has, in the past, "expressed its skepticism regarding the technical propriety" of using trial subpoenas to obtain pretrial production of documents at counsel's office (as opposed to the courthouse at trial) after the close of discovery. Rockwood Select Asset Fund XI v. Devine, Millimet & Branch, PA, No. 14-CV-303-JL, 2016 WL 2637818, at *9-10 & nn. 16-17 (D.N.H. May 6, 2016); see also Fed. R. Civ. P. 45(c). This concern arises particularly in circumstances such as these,

---

[11] Document no. 133.

[12] E.g., Mot. to Quash Ex. A (doc. no. 133-1) at 1.

[13] Mot. to Quash (doc. no. 133) at 3.

where the party seeking belated discovery was on notice of the documents' relevance and had ample opportunity to obtain them during the discovery period.

Any prejudice to the plaintiff arising from the defendant's efforts to seek such discovery outside of the discovery period is mitigated here, however, by the limited number and scope of documents returned and the extended delay of trial. The defendant represents that only one airline (JetBlue Airways) responded with a document, and that this document constituted a single line of a manifest.[14] Because of the circumstances occasioning this trial's delay, the plaintiff and his counsel have had over four months to determine how, if at all, to address this small amount of information at the upcoming trial. Accordingly, the court denies the plaintiff's motion to quash the subpoenas.

## II. **Defendant's motions in limine**

Three of the defendant's motions in limine address evidence connected to the FBI's search of Reyes' office, the subsequent FBI and OIG investigations, and the implications of those investigations on Reyes's security clearance. The court

---

[14] Obj. to Mot. to Quash (doc. no. 138) at 1-3.

10

addresses those motions together.  It then addresses the defendant's remaining four[15] motions in limine in turn.

### A.    Investigation-related motions in limine

In September 2013, Kaleb Rodríguez Cruz, Reyes's childhood friend, emailed him an invitation to attend an all-expenses-paid trip to Russia to attend a "cultural exchange" program sponsored by the Russian Cultural Centre in the United States.  Reyes forwarded the invitation to Lisa Western, the District Office Security Manager, seeking clarification on whether and from whom he needed permission to attend.

According to the defendant, the FBI believed that this "cultural exchange" program was sponsored by an organization led by a known Russian spy and the program was aimed at recruiting the invitees for espionage purposes.  As a result, they interviewed Reyes and searched both his physical office at the USAO and his work computer.  After the search, both the FBI and the Department of Justice's Office of the Inspector General (OIG) opened investigations on Reyes.

---

[15] On May 2, 2018, the defendant filed a ninth motion in limine, this time seeking to exclude certain testimony from Idalia Mestey Borges, the employee whom Reyes argues he was retaliated against for supporting in early 2012.  See Defendant's Mot. to Preclude Mestey Testimony (doc. no. 164).  The court will address that motion in a separate order.

As an intelligence specialist, Reyes had access to certain FBI resources. In light of the investigation, the FBI limited Reyes's access to those resources. Citing Reyes's inability to perform the duties of an intelligence specialist without such access, USA Rodríguez placed him on a sequestration-related furlough.[16]

Reyes's duties as an intelligence specialist remained suspended when he returned from furlough. His access to FBI resources remained restricted, even after the FBI investigation concluded. For a time, he acted as a paralegal. During that time, the USAO engaged in intermittent discussions with the Executive Office of the United States Attorney (EOUSA) concerning the potential revocation of Reyes's security clearance in light of those investigations.[17] The EOUSA likewise held discussions with the Security and Emergency Management Staff (SEMS), which handles security issues for United States Attorney's Offices, on the subject.

Though the Department of Justice never revoked Reyes's security clearance, the FBI continued to restrict his access to

---

[16] The federal government shut down in the fall of 2013. Many federal employees nationwide were furloughed between October 1 and October 16. The plaintiff had not initially been included among that number.

[17] See Defendant's Mot. to Preclude Security Clearance Investigation (doc. no. 125) at 2.

its materials. On January 22, 2015, Reyes's request to have his duties as an intelligence specialist reinstated was denied, at least in part because he still lacked access to FBI resources. Reyes resigned shortly thereafter.

Reyes contends that the FBI's search of his office and computer, the FBI's and OIG's investigations, the removal of his duties as an intelligence specialist, the refusal to reinstate those duties, his superiors' efforts to arrange for the revocation of his security clearance, and what he characterizes as his constructive discharge, among other actions, amounted to retaliation for Reyes's perceived support of another employee's EEO complaint in early 2012 and his own EEO complaints. He further argues that the defendant's explanations for these alleged acts of retaliation are merely pretextual.

The defendant moves to exclude three categories of evidence relating to these events. First, the defendant moves to exclude all evidence relating to the decision of whether to revoke Reyes's security clearance. Second, the defendant seeks to preclude Rodríguez Cruz from testifying. Finally, the defendant moves to preclude the plaintiff from claiming, presenting evidence, or otherwise arguing that the search of his office and computer violated the Fourth Amendment. As discussed here, the court grants the first motion, denies the second motion, and grants the third motion in part and denies it in part.

13

### 1. Plaintiff's security clearance investigation[18]

Reyes contends that USA Rodríguez insisted that his security clearance be revoked in retaliation for his apparent support of another employee's EEO complaint in 2012.[19]  The defendant moves "to preclude all testimony and argument regarding any inquiry or investigation into whether Plaintiff's security clearance should have been suspended or revoked" on grounds that "judicial review of any inquiry or investigation regarding Plaintiff's security clearance is barred by Department of the Navy v. Egan, 484 U.S. 518 (1988) and its progeny."[20]  This extends, the defendant argues, to evidence and testimony "that USAO management and their lawyers sought to suspend or revoke Plaintiff's security clearance."[21]

> In Egan, the Supreme Court
>
> made clear that the general presumption favoring judicial review "runs aground when it encounters concerns of national security," as in cases "where the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch."

---

[18] Document no. 125.

[19] Plaintiff's Omnibus Obj. (doc. no. 148) at 6, 11.

[20] Defendant's Mot. to Preclude Security Clearance Investigation (doc. no. 125) at 1.

[21] Id. at 6.

Rattigan v. Holder, 689 F.3d 764, 767 (D.C. Cir. 2012) (en banc) (quoting Egan, 484 U.S. at 527). Accordingly, as the plaintiff concedes, the Egan line of cases precludes judicial review, including jury trials, of "Title VII claims that require the trial court to evaluate the merits of the security clearance determination."[22] See also Makky v. Chertoff, 541 F.3d 205, 218 (3d Cir. 2008) (concluding it would be "impermissible" to "review the merits of [the plaintiff's] security clearance access").

Reyes then argues the converse of that proposition: that because he does not directly or indirectly challenge the merits of the decision concerning his security clearance, "Egan is inapplicable."[23] But he does not provide, and the court has not found, any authority to support so broad a proposition.

To the contrary, courts have generally extended Egan's bar to the circumstances surrounding a security clearance decision, even where the merits of that decision were not directly at issue. For example, the Fourth and Eleventh Circuit Courts of Appeals have found that courts lacked jurisdiction to review even the instigation or initial stages of a security clearance determination, reasoning that

---

[22] Plaintiff's Omnibus Obj. (doc. no. 148) at 11.

[23] Plaintiff's Omnibus Obj. (doc. no. 148) at 11.

15

> [t]he reasons why a security investigation is initiated may very well be the same reasons why the final security clearance decision is made. Thus, if permitted to review the initial stage of a security clearance determination to ascertain whether it was a retaliatory act, the court would be required to review the very issues that the Supreme Court has held are non-reviewable.

Becerra v. Dalton, 94 F.3d 145, 149 (4th Cir. 1996); see also Hill v. White, 321 F.3d 1334, 1336 (11th Cir. 2003) ("To review the initial stages of a security clearance determination is to review the basis of the determination itself regardless of how the issue is characterized.").

The Court of Appeals for the District of Columbia has recognized a narrow exception to that rule, permitting judicial review of "Title VII claims based on . . . knowingly false security reports or referrals" that prompted a security clearance review. Rattigan, 689 F.3d at 770. It based this exception on the conclusion that "Egan's absolute bar on judicial review covers only security clearance-related decisions made by trained Security Division personnel and does not preclude all review of decisions by other FBI employees who merely report security concerns." Id. at 768.

Reyes invokes Rattigan to argue that communications from his superiors at the USAO with the EOUSA, and the EOUSA's communications with SEMS, concerning the investigation into his security clearance are relevant to establish pretext, regardless

16

of the merits of the security clearance decision.[24]  He characterizes those communications as constituting (1) a request from the USAO that Reyes's security clearance be revoked, and (2) queries from the USAO into the status of that decision.[25]  He has not, however, argued that USA Rodríguez -- or any member of her office -- made a "knowingly false security report[ ] or referral," in a manner that would bring this claim within Rattigan's narrow exception.

Accordingly, the court grants the defendant's motion to exclude evidence and testimony concerning any inquiry or investigation into Reyes's security clearance.[26]  As the court understands the evidence, that includes discussions between Reyes's superiors at the USAO and the Department of Justice's Executive Office concerning whether Reyes's security clearance would be revoked.  It is unclear from the defendant's motion, however, whether the defendant also argues that the Egan line of cases precludes the plaintiff from introducing evidence concerning the FBI's investigation into Reyes or its decision to prevent Reyes from accessing FBI materials and resources.

---

[24] Plaintiff's Omnibus Obj. (doc. no. 148) at 12.

[25] Id. at 9 n. 5.

[26] Given the jurisdictional nature of this inquiry, these arguments were material to, and ought to have been raised by the defendant during, the summary judgment proceedings.  They were not.  See Defendant's Summary Judgment Mem. (doc. no. 56-1).

Specifically, it is unclear from the record before the court on this motion that the FBI's investigation beginning in October 2013 was connected in any way to a security clearance determination by SEMS. As a result, on this record, the court does not preclude Reyes from introducing evidence concerning the FBI's investigation, subject to reconsideration in light of the evidence at trial.

### 2. Rodríguez Cruz testimony[27]

The defendant also moves to exclude Rodríguez Cruz's testimony, arguing that any testimony he may offer lacks relevance and, further, that the danger of unfair prejudice outweighs its probative value. See Fed. R. Evid. 402, 403. "Relevant evidence is admissible" unless the law or rules provide otherwise. Fed. R. Evid. 402. Conversely, irrelevant evidence is not admissible. Cf. id. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403.

---

[27] Document no. 140.

18

Reyes argues that the FBI's search and its ensuing investigation amounted to part of the retaliation he suffered for his perceived support for another employee's EEO complaint. Though the defendant cites Cruz's emailed invitation to attend an event sponsored by an organization led by a known Russian spy as the actual reason for the investigation, Reyes contends that this explanation is pretextual.

To succeed at trial, Reyes bears the burden of proving that "his employer's stated reasons are pretextual and proffered to disguise retaliatory animus." Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012). This analysis focuses, of course, "on the motivations and perceptions of the decisionmaker" -- here, USAO management. Dávila v. Corp. de P.R. Para la Difusión Pública, 498 F.3d 9, 16-17 (1st Cir. 2007).

The defendant is not wrong that Rodríguez Cruz's testimony bears little on the motivations of Reyes's superiors. But it may yet be relevant to demonstrating pretext. The defendant contends that the investigation stemmed from the FBI discovering "that the Plaintiff had been communicating with a known Russian spy."[28] The court is hard-pressed to conclude, at this pre-trial stage, that evidence concerning the source of the invitation

---

[28] Defendant's Mot. to Exclude Fourth Amendment Theory (doc. no. 124) at 3.

from the plaintiff's childhood friend (an ostensibly innocuous individual) is entirely irrelevant to countering that position. And any knowledge, or lack thereof, about the USAO management's awareness of the source and circumstances of this information can presumably be developed by the defense on cross examination.

The defendant also argues that Reyes himself can present that evidence, rendering Rodríguez Cruz's testimony cumulative, immaterial, and unnecessary.[29] The court is, however, disinclined to preclude testimony as cumulative, or to determine that a witness's testimony is "unnecessary," before trial -- that is, before the presentation of the evidence that would render it so.[30]

Finally, the defendant seeks to preclude Rodríguez Cruz's testimony as barred under Egan, 484 U.S. at 527, and as prejudicial, confusing, or misleading in a manner that would "require[e] Defendant to defend against any Egan-related testimony . . . by calling its own lawyers to the stand."[31] As

---

[29] Defendant's Mot. to Preclude Rodriguez Cruz Testimony (doc. no. 140) at 2-3.

[30] The defendant's argument that allowing the testimony of a single witness -- Rodríguez Cruz -- would prejudice the defendant by "allowing an unnecessary witness to testify in a trial that is already expected to be long," id. at 3, runs somewhat incongruously alongside the defendant's own stated intention to call no fewer than 27 witnesses at trial. See Defendant's Witness List (doc. no. 111).

[31] Id. at 3.

discussed supra Part II.A.1, Reyes's evidence concerning the initiation and course of the investigation into his security clearance is curtailed under Egan. That ruling does not, at this juncture, extend to the FBI's search of his office nor to the opening of the FBI investigation. Nor does it prevent Rodríguez Cruz -- who was in no way involved with that investigation -- from testifying concerning the invitation.

### 3. Fourth Amendment[32]

The defendant moves pursuant to Federal Rules of Evidence 103, 402, and 403 to exclude any evidence or argument that the plaintiff's rights to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment, were violated by the FBI's and Office of Inspector General's warrantless searches of his office at the USAO and his work computer.

The defendant correctly observes that the plaintiff has brought no claim seeking to recover for violations of his Fourth Amendment rights. His sole claim before this court is one for retaliation under Title VII of the Civil Rights Act. See infra Part. II.D. Reyes has not sought to amend his complaint to assert such a claim at this late stage in the proceedings, and none of the arguments that he has made demonstrate the good

---

[32] Document no. 124.

cause necessary to amend the scheduling order so as to amend his complaint. See Fed. R. Civ. P. 16(b)(4).

Even if the plaintiff demonstrated the necessary good cause for such an amendment, the court is skeptical, on the facts presented here, that Reyes could establish a Fourth Amendment violation. "To prevail on a claim that a search or seizure violated the Fourth Amendment, a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched." United States v. Battle, 637 F.3d 44, 48 (1st Cir. 2011). Reyes accepts that he lacked the necessary privacy interest in his DOJ-provided computer. Every time he logged on, the computer system informed him that he lacked such an interest in it and any communications transmitted through it or stored on it.[33] Reyes further agrees that any review of his personnel file was authorized.[34]

He maintains, however, that he possessed a reasonable expectation of privacy in the physical space of his office, and that the FBI's search of his office violated that expectation. A public-sector employee may have the necessary reasonable expectation of privacy in portions of his office where he stores

---

[33] See Defendant's Mot. to Exclude Fourth Amendment Theory (doc. no. 124) at 7; Plaintiff's Omnibus Obj. (doc. no. 148) at 7.

[34] Plaintiff's Omnibus Obj. (doc. no. 148) at 7-8.

personal effects.  See O'Connor v. Ortega, 480 U.S. 709, 718-19 (1987).  But Reyes has not asserted that the FBI searched any location within his office where he maintained personal effects; he argues only that the search of his office, as a whole, violated that right.[35]

As Reyes points out, evidence concerning the search of his workplace and computer may be relevant to his retaliation claim.[36]  Specifically, Reyes argues that the search occurred in retaliation for actions that he took and that the reasons given for the search are pretextual.  He does not need to invoke the Fourth Amendment to make that argument.  Doing so where he has not pleaded a claim under the Fourth Amendment would inject more prejudice and potential confusion and delay into the proceedings than its probative value warrants.  See Fed. R. Evid. 402, 403.  Reyes may, however, present otherwise admissible evidence about the nature and extent of the search and the allegedly pretextual nature of the stated reason for it, without raising or referring to the Fourth Amendment or his constitutional rights.[37]

Accordingly, the defendant's motion to exclude evidence and argument that Reyes's Fourth Amendment rights were violated

---

[35] See id. at 8.

[36] Plaintiff's Omnibus Obj. (doc. no. 148) at 6.

[37] Id. at 6-7.

through the search of his office and office computer is granted to the extent that the plaintiff may not invoke the Fourth Amendment in reference to the office search, but denied insofar as the defendant sought to exclude evidence of the search in its entirety.[38]

## B. Other employees' allegations[39]

The defendant moves to exclude evidence and argument concerning allegations of retaliation or discrimination experienced by other employees of the USAO in Puerto Rico. This includes evidence of allegations raised in four lawsuits brought by current and former USAO employees Juan Milanés, Carmen Márquez, and Nelson Pérez, all of whom alleged Title VII violations. The defendant argues that evidence of discrimination and retaliation against other employees bears no relevance to Reyes's retaliation claim, see Fed. R. Evid. 402, and that its prejudice would outweigh its probative value, see Fed. R. Evid. 403. The court agrees as a general matter and grants the defendant's motion in part, but also denies it in part.

---

[38] As discussed supra Part II.A.1, the defendant has not argued that evidence concerning the FBI's search of Reyes's office and computer, or evidence of the FBI's own investigation into Reyes, would run afoul of Egan, 484 U.S. at 527.

[39] Document no. 123.

24

Reyes concedes that lawsuits filed by Márquez in 2005[40] action and Milanés in 2009[41] lack relevance to his own action, and represents that he "will not attempt to introduce evidence [of] the Márquez 2005 nor the Milanés 2009 lawsuits."[42] The court does not view the plaintiff's written submissions under 28 C.F.R. § 16.23(c) ("Touhy statements"), as necessarily inconsistent with that representation, as the defendant suggests.[43] The court therefore denies the defendant's motion to exclude these two lawsuits as moot.

Two other lawsuits remain at issue -- one by Márquez and one by Nelson Pérez-Sosa. Márquez prevailed at trial in her 2005 action and was reinstated to her position in 2008. In 2016, after the events leading to Reyes's departure, Márquez filed a second lawsuit.[44] In this still-pending action, she alleges retaliation under Title VII and discrimination under the Rehabilitation Act resulting from, among other things, her

---

[40] Márquez-Marin v. Gonzalez, No. 05-cv-1619-SJM (D.P.R. filed June 9, 2005).

[41] Milanés v. Holder, C.A. No. 09-02132-JAF (D.P.R. filed May 5, 2009).

[42] Plaintiff's Omnibus Obj. (doc. no. 148) at 4 n.1.

[43] See Supp. to Defendant's First Mot. in Limine (doc. no. 158) at 2-3 & nn. 1-2.

[44] Márquez-Marin v. Lynch, No. 16-cv-01706-JAW (D.P.R. filed Apr. 13, 2016).

participation in the EEO process after another USAO employee filed an EEO complaint in late 2013 naming Márquez as a witness. Though she does not name Reyes as the employee in question, the complaint could reasonably be read to refer to Reyes's first EEO complaint, filed on November 29, 2013.[45]

Pérez-Sosa filed a Title VII retaliation action in 2017, alleging that a hostile work environment beginning in 2015 culminated in his demotion in 2016.[46]  Pérez-Sosa's still-pending lawsuit alleges that the USAO retaliated against him for supporting Reyes's second administrative EEO complaint in 2014 and AUSA Márquez's 2015 allegations of retaliation and disability discrimination.

As Reyes points out, both Márquez and Pérez allege retaliation at least in part as a result of their participation in Reyes's EEO complaints.  Evidence of retaliation against Márquez and Perez may be relevant in this action to the extent it tends to demonstrate a "discriminatory atmosphere," in the sense that it may support Reyes's contention that management had a tendency to retaliate against those who filed, or participated in, EEO complaints.  See Cummings v. Std. Register Co., 265 F.3d

---

[45] See Márquez-Marin v. Lynch, No. 16-cv-01706-JAW, doc. no. 1 ¶¶ 7.1-7.8.

[46] Pérez-Sosa v. Sessions, No. 17-cv-01399-WES (D.P.R. filed Mar. 26, 2017).

56, 63 (1st Cir. 2001) ("evidence of a 'discriminatory atmosphere' may sometimes be relevant to showing the corporate state-of-mind," but can be "too attenuated" to justify admission and "should be let in sparingly."). Such events are most relevant when contemporaneous with the alleged retaliation against the plaintiff -- that is, as evidence of the same atmosphere, during the same timeframe, created by the same individuals. See id. The further it is removed from the circumstances of Reyes's case, the less relevant such evidence becomes.

Thus, any testimony on this subject from Márquez or Pérez-Sosa will be limited to evidence concerning the witnesses' support of Reyes and any negative consequences experienced as a result, but would not include testimony concerning their own complaints with the EEO or retaliation-based lawsuits. The plaintiff sets out a general outline of Márquez's and Pérez-Sosa's proposed testimony in her Touhy statements.[47] Consistent with this order, these witnesses may not testify concerning: (1) a conclusory and general "pattern of retaliation and hostile work environment"[48]; (2) the fact that they, or other employees,

---

[47] See Supp. to Defendant's First Mot. in Limine Exs. A & B (doc. nos. 158-1 and 158-2).

[48] Márquez Touhy Statement (doc. no. 158-1) at IV; Pérez-Sosa Touhy Statement (doc. no. 158-2) at VII.

have filed lawsuits or administrative complaints alleging retaliation or a hostile work environment[49]; or (3) the fact that Márquez was ordered reinstated in her position following a successful employment action in 2008.[50]

As a general matter, the remainder of these witnesses' proposed testimony appears in line with the permissible evidence outlined above. To be clear, however, the court at this pretrial juncture has not necessarily ruled this testimony admissible; it merely declines to declare it <u>inadmissible</u> prior to trial for the reasons proposed in the defendant's motion. The court reserves ruling on other issues of admissibility (<u>e.g.</u>, hearsay, Fed. R. Evid. 801 <u>et</u> <u>seq.</u>) until the evidence is presented at trial. The defendant may, of course, also request an appropriate limiting instruction with respect to this evidence. <u>See</u> Fed. R. Evid. 105.

### C. Pre-EEO complaint evidence[51]

"In order to establish a prima facie claim of retaliation under Title VII, a plaintiff must make a showing (1) that [he] engaged in protected conduct, (2) that [he] suffered an adverse

---

[49] Márquez <u>Touhy</u> Statement (doc. no. 158-1) at IV.A; Pérez-Sosa <u>Touhy</u> Statement (doc. no. 158-2) at VII.A-B.

[50] Márquez <u>Touhy</u> Statement (doc. no. 158-1) at I.B.

[51] Document no. 127.

employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action." Vera v. McHugh, 622 F.3d 17, 32 (1st Cir. 2010). The defendant moved for summary judgment on the grounds that the plaintiff engaged in no protected conduct, and therefore could not have been retaliated against, before he filed his first EEO complaint in November 2013.[52] Specifically, Reyes has alleged that his superiors at the USAO perceived him to be supporting the EEO complaint of AUSA Mestey and opposing the USAO's treatment of her when he provided her with a bullet proof vest in early 2012. The defendant argued, among other things, that there was no such perception. Though expressing skepticism that Reyes's "perceived opposition" conduct predating his EEO complaint amounted to "protected conduct," the court denied the defendant's summary judgment motion, without prejudice to the defendant seeking relief under Rule 50 at trial.[53]

The defendant now moves to exclude evidence of events occurring prior to Reyes's November 2013 EEO complaint not, he claims, in an effort "to reargue the Defendant's summary judgment motion," but on the grounds that "undue prejudice would

---

[52] See Defendant's Summary Judgment Mem. (doc. no. 56-1) at 27-30.

[53] See Hearing Tr., Aug. 18, 2017 (doc. no. 119) at 2-13.

result from the jury hearing legally defective evidence, even if the Court ultimately grants the Defendant's Rule 50(a) motion at trial."[54]

This request presents something of a conundrum.  The court's resolution of the defendant's anticipated Rule 50 motion depends on the evidence presented by the plaintiff in his case-in-chief.  Should the court ultimately resolve that motion in the defendant's favor, then some evidence presented by the parties before that ruling will necessarily have been in vain and will inevitably trigger a motion to strike that evidence.  But, despite the defendant's disclaimer, to exclude evidence at trial solely on that basis would, in effect, be to revisit the court's decision on summary judgment or to decide that anticipated motion in the defendant's favor before the plaintiff's presentation of evidence.  The court is not inclined to do so, especially where any such prejudice to the defendant may be mitigated by a curative instruction.  See CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009) ("juries are presumed to follow the court's instructions").

Accordingly, the defendant's motion in limine to exclude evidence of alleged retaliation preceding Reyes's 2013 EEO

_____

[54] Defendant's Mot. to Preclude Pre-November 2013 Conduct (doc. no. 127) at 1.

complaint is denied.  Should the court ultimately conclude that Reyes undertook no protected activity (perceived or otherwise), the court will strike the evidence relevant solely to that theory of retaliation and properly instruct the jury.

### D.    Back pay and front pay[55]

The defendant moves to exclude the plaintiff's argument that he is entitled to recover back pay and front pay, and any evidence supporting such claims.  The court grants this motion.

Reyes has brought a single claim for retaliation under Title VII of the Civil Rights Act.  In responding to the defendant's motion to dismiss the complaint, he disavowed any separate claims, and represented that his "sole cause of action is for discrimination and retaliation under Title VII . . . ."[56] Though he alleges that he was constructively discharged in retaliation for his protected activity,[57] and thus that the circumstances of his departure from the USAO relate to his claim under Title VII, he included no separate count for wrongful termination.

Consistent with this approach, his complaint does not contain a request for damages in the form of back pay or front

---

[55] Document no. 128.

[56] Obj. to Mot. to Dismiss (doc. no. 25) at 6.

[57] See Compl. (doc. no. 1) ¶¶ 1.8, 17.30, 17.34

31

pay as a legal remedy.  He asks only for compensatory damages, up to the statutory maximum of $300,000, see 42 U.S.C. § 1981a(b)(3), as relief should he prevail on his Title VII claim.[58]  On this basis, the court at the summary judgment hearing concluded that, while the plaintiff lacks an affirmative constructive discharge claim, he was not barred from developing facts relating to his alleged constructive discharge as a retaliatory act.[59]

Having conceded that he is not entitled to back pay or front pay as legal remedies for his Title VII claim,[60] Reyes now clarifies that he seeks those remedies not as damages at law, but as equitable relief.[61]  This request, characterized as such, appears in his complaint.[62]

Although such equitable remedies may be available to a Title VII plaintiff, and not subject to the statutory cap, see Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 847–48

---

[58] Id. ¶ 19.4.

[59] Summary Judgment Hrg. Tr. (doc. no. 119) at 14–16.

[60] Plaintiff's Omnibus Obj. (doc. no. 148) at 18.

[61] Id.

[62] Compl. (doc. no. 1) ¶¶ 19.7 ("Mr. Reyes is also entitled to back pay, as well as payments for the reduction in his anticipated compensation pursuant to the federal step system, as part of his equitable relief."); 19.9 ("Plaintiff is entitled to equitable relief in the form of reinstatement or front pay in lieu of reinstatement.").

(2001), the court need not resolve the issue of their availability now. Even if these remedies are available to the plaintiff, such remedies are not the province of the jury. Ramos v. Roche Prod., Inc., 936 F.2d 43, 50 (1st Cir. 1991) (plaintiffs "not entitled to a jury trial under their Title VII equitable claims"). Thus, in the event of a verdict in the plaintiff's favor, the court will permit further briefing and argument on the availability of these remedies in equity[63] and, if they are available, it will hold a post-trial evidentiary hearing on damages.

The defendant's motion to exclude from the jury trial evidence supporting the plaintiff's requests for back pay and front pay is therefore granted. Consistent with this order, any of the documents relevant only to these issues produced by the defendant after close of discovery, see supra Part 1.A, are also excluded on this basis.

---

[63] The defendant's motion in limine, like the court at the summary judgment proceedings, focused on whether plaintiff could recover back pay and front pay from a separate, unpleaded wrongful termination claim. To be clear, as discussed supra, he cannot. The court is disinclined to resolve the availability of such remedies in equity absent any briefing on that subject from the defendant.

### E. Plaintiff's EEO investigation report exhibits[64]

Reyes included the EEO's reports of investigation into his EEO complaints, in their entirety, on his proposed exhibit list as two exhibits.[65] The defendant moves to preclude him from introducing these reports, which together span a total of 2,757 pages, in their entirety. Reyes agrees that blanket admission of the two reports of investigation is inappropriate, and has further agreed to review those reports "to identify which individual documents from these [reports of investigation] will be sought to be introduced at trial."[66]

The court therefore denies the defendant's motion as moot and grants the plaintiff's request to file an amended exhibit list identifying the individual documents from the two EEO reports of investigation (proposed exhibits 19-20), as well as from the report of investigation of the Office of the Inspector General (proposed exhibit 21).

---

[64] Document no. 139.

[65] See Plaintiff's Exhibit List (doc. no. 113) Exs. 19 and 20.

[66] Plaintiff's Response to Defendant's Mot. to Preclude ROIs (doc. no. 149) at 1-2.

## III. Conclusion

For the foregoing reasons, the court:

- DENIES the plaintiff's motion in limine[67];

- DENIES the plaintiff's motion to quash subpoenas[68];

- GRANTS the defendant's motion to exclude evidence and argument regarding the investigation into the plaintiff's security clearance[69];

- DENIES the defendant's motion to exclude the testimony of Kaleb Rodríguez Cruz.[70]

- GRANTS-IN-PART and DENIES-IN-PART the defendant's motion to exclude evidence and arguments concerning alleged violations of the plaintiff's Fourth Amendment rights[71];

- GRANTS-IN-PART and DENIES-IN-PART the defendant's motion in limine to exclude evidence of other employees' allegations of discrimination and retaliation[72];

- DENIES the defendant's motion to preclude evidence and argument on pre-November 2013 conduct[73];

- GRANTS the defendant's motion to preclude evidence and argument on back pay and front pay at trial[74]; and

---

[67] Document no. 122.

[68] Document no. 133.

[69] Document no. 125.

[70] Document no. 140.

[71] Document no. 124.

[72] Document no. 123.

[73] Document no. 127.

[74] Document no. 128.

- DENIES as moot the defendant's motion to exclude plaintiff's proposed exhibits 19 and 20.[75]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:     May 4, 2018

cc:   Bamily Lopez-Ortiz, Esq.
      Jason C. Weida, AUSA
      Susan M. Poswistilo, AUSA

---

[75] Document no. 139.