# United States Court of Appeals
## For the First Circuit

No. 19-1082

UNITED STATES,

Appellee,

v.

HECTOR ANTONIO CRUZ-MERCEDES,
a/k/a Pedro Colon, a/k/a Hector Cruz,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Stahl, and Lipez,
Circuit Judges.

John F. Palmer for appellant.
Yael T. Epstein, Attorney, U.S. Department of Justice, with
whom Andrew E. Lelling, United States Attorney, Richard E.
Zuckerman, Principal Deputy Assistant Attorney General, S. Robert
Lyons, Chief, Criminal Appeals & Tax Enforcement Policy Section,
Stanley J. Okula, Jr., Attorney, and Alexander P. Robbins,
Attorney, were on brief for appellee.

December 18, 2019

**STAHL**, <u>**Circuit Judge**</u>. During a law enforcement sting targeting a Stolen Identity Refund Fraud ("SIRF") scheme, Hector Antonio Cruz-Mercedes was administratively arrested for unlawful presence in the United States. Following the arrest, he was fingerprinted during a routine booking. Subsequently, the government charged him with multiple counts related to his involvement in the fraud scheme. Prior to trial, Cruz-Mercedes moved to suppress his booking fingerprints as the "fruit" of what he contended was an unlawful arrest.

The district court determined that Cruz-Mercedes was arrested without probable cause prior to his admission of unlawful presence in the United States. Nonetheless, the court admitted the fingerprint evidence under the doctrine of inevitable discovery. Following the district court's ruling, Cruz-Mercedes conditionally pleaded guilty, reserving the right to appeal the denial of his suppression motion as to the fingerprint evidence's admission.

We affirm the district court's denial of the motion to suppress, albeit on different grounds. Specifically, we find on these facts that the fingerprints were obtained for routine booking purposes. Thus, there is no basis in the record of this case for suppression of the fingerprint evidence, and accordingly we need not reach the district court's probable cause or inevitable discovery determinations.

## I. Factual Background

The relevant facts are drawn primarily from the district court's findings, see United States v. Cruz-Mercedes, 379 F. Supp. 3d 24, 29-34 (D. Mass. 2019) ("Cruz-Mercedes I"),[1] "consistent with record support, with the addition of undisputed facts drawn from the suppression hearing," United States v. Hernandez-Mieses, 931 F.3d 134, 137 (1st Cir. 2019).

### A.    The Arrest

In March 2012, the Department of Homeland Security's Homeland Security Investigations ("HSI") office in Boston received information from a confidential informant ("CI") about a fraudulent tax return scheme. According to the CI, the implicated individuals allegedly used Social Security numbers stolen from Puerto Rican residents to file false tax returns and fraudulently obtain refund checks.[2] On three separate occasions between April and May 2012, the CI met with one individual involved in the scheme, Odalis Castillo-Lopez, with the goal of purchasing fraudulent refund checks. Subsequently, the CI arranged to meet

---

[1] The district court's opinion is a written explanation of its September 11, 2018 oral rulings granting in part and denying in part Cruz-Mercedes's motion to suppress. See Cruz-Mercedes I, 379 F. Supp. 3d at 29-30 & n.1.

[2] This type of scheme is known as Stolen Identity Refund Fraud.

with Castillo-Lopez on June 7, 2012 under the guise of purchasing approximately $160,000 in fraudulently obtained checks. Agents from HSI and the Secret Service established surveillance of the June 7 meeting with the intention of arresting Castillo-Lopez. The agents convened in a parking lot adjacent to a McDonald's in South Attleboro, Massachusetts.

Castillo-Lopez arrived at the McDonald's in a white Volkswagen Passat accompanied by an unknown passenger, later identified as Cruz-Mercedes. Alma Martinez, the sister of Cruz-Mercedes's girlfriend Betty Sanchez, was later identified as the owner of the Passat. The two men exited the vehicle and entered the McDonald's, followed closely by Special Agents John Soares and Michael Riley of HSI and Special Agent Fred Mitchell of the Secret Service. Soares and Mitchell approached Castillo-Lopez inside the McDonald's, asked him some questions, escorted him outside, arrested him, and took him to the Boston HSI office for processing. The officers seized two cell phones from Castillo-Lopez during his arrest.

At the same time, Agent Riley briefly conversed with Cruz-Mercedes inside the McDonald's, but there is no record evidence of the substance of that conversation. At some point, Riley escorted Cruz-Mercedes out of the McDonald's, and Special Agent Cronin of HSI subsequently questioned Cruz-Mercedes in the

parking lot.[3]

Outside the McDonald's, Cruz-Mercedes identified himself to Cronin as "Pedro Colon" and displayed identification documents bearing that name, including a Massachusetts driver's license and a Social Security card. Cronin asked Cruz-Mercedes if the documents were, in fact, his. Cruz-Mercedes responded that his name was actually Hector Cruz-Mercedes, that he was a native of the Dominican Republic, and that he had unlawfully entered the United States. Cronin then formally arrested Cruz-Mercedes for unlawful presence in the United States. A search of Cruz-Mercedes incident to that arrest uncovered two cell phones, which were then seized. At no point during the interaction did law enforcement advise Cruz-Mercedes of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).

Cruz-Mercedes was then transported to the Boston HSI

---

[3] During the suppression hearing, law enforcement witnesses differed as to whether Cruz-Mercedes was handcuffed by the time he was taken outside by Riley, or if instead he was handcuffed following his conversation with Cronin. Soares testified that Cruz-Mercedes was handcuffed following his formal arrest by Cronin, while Mitchell testified that Cruz-Mercedes was handcuffed by Riley inside the McDonald's. Cruz-Mercedes I, 379 F. Supp. 3d at 31. Riley was not available to testify at the hearing. The district court said that "Agent Cronin testified that [Cruz-Mercedes] had been placed in custody before being brought out to the parking lot to talk to him." Id. However, the record also reflects that Cronin recalled Cruz-Mercedes leaving the McDonald's unaccompanied by law enforcement agents. The district court ultimately declined to resolve this factual dispute, and we need not do so.

office for processing. There, Agent Cronin created an alien file for Cruz-Mercedes, who had not previously encountered immigration authorities and thus had no file. Cronin fingerprinted Cruz-Mercedes and placed the fingerprint exemplars into his alien file.

## B. Investigation of the SIRF Scheme

Agents impounded the Passat and transported it to the garage in Boston's O'Neill Federal Building. There, Mitchell and Soares searched the vehicle and discovered an envelope tucked into the headliner above the driver's seat containing ten United States Treasury checks. The envelope also contained a list of individuals and their personally identifiable information, including names, dates of birth, and Social Security numbers corresponding to the payees of the checks.

The search also uncovered a personal check and a bank deposit slip listing the associated checking account as belonging to "Anna Cruz," later identified as Cruz-Mercedes's aunt. Through text messages, Castillo-Lopez had instructed the CI to deposit proceeds from cashing the fraudulent Treasury checks into that bank account, as well as a bank account belonging to Maria Martinez, the mother of Cruz-Mercedes's girlfriend, Betty Sanchez. HSI sent the evidence obtained from the Passat to the Massachusetts State Police for fingerprint testing. Those tests recovered one latent fingerprint clear enough for identification, which matched

a fingerprint taken from Cruz-Mercedes during his booking.

As part of his investigation, Agent Soares obtained a photograph of the real Pedro Colon from the Puerto Rico Registry of Motor Vehicles and compared it to Cruz-Mercedes, deducing that the two visibly were not the same person. On August 16, 2012, Cruz-Mercedes was arrested in Bronx County, New York for the deceptive use of a Social Security number in violation of 42 U.S.C. § 408(a)(7)(B) (2012),[4] based on his falsely identifying himself to Cronin as Pedro Colon and his producing a Social Security card bearing that name. Following arraignment, Cruz-Mercedes was released on a $10,000 bond and ordered to appear in the District of Massachusetts on or before August 24, 2012. Instead, he fled the United States and returned to his native Dominican Republic.

Separately, Soares obtained and executed a warrant to search one of Castillo-Lopez's seized cell phones on August 9, 2012. In one set of text communications, an unidentified phone number instructed Castillo-Lopez to make deposits into a bank account belonging to Maria Martinez. Castillo-Lopez had relayed those deposit instructions to the CI. Responding to a grand jury subpoena, the cellular service provider for the unidentified phone number gave to Soares the unique identifier of the number's

---

[4] All citations to the United States Code are to the official 2012 edition.

affiliated device, which matched that of one of the cell phones seized from Cruz-Mercedes on June 7.

Following Cruz-Mercedes's failure to appear in court on August 24, 2012, Soares attempted to locate him at his last known address. While there, Soares interviewed Cruz-Mercedes's girlfriend, Betty Sanchez, who provided two cell phone numbers belonging to Cruz-Mercedes. One of the provided numbers was the same phone number that directed Castillo-Lopez to make bank deposits. Relying on that information and the unique identifier provided by the cellular provider, on November 9, 2012, Soares obtained a search warrant for one of Cruz-Mercedes's seized cell phones. The resulting search confirmed that the number associated with the device matched the phone number that had provided Castillo-Lopez with deposit instructions.

## II. Procedural Background

On February 26, 2014, a grand jury in the District of Massachusetts indicted Cruz-Mercedes on twenty counts related to the SIRF scheme, one count for fraudulent use of a Social Security number, and one count for failure to appear on August 24, 2012.[5]

---

[5] Altogether, the indictment contained: ten counts of conversion of government property under 18 U.S.C. § 641; one count of money laundering under 18 U.S.C. § 1956(a)(3)(B); one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h); eight counts of aggravated identity theft under 18 U.S.C. § 1028A; one count of fraudulent use of a Social Security number under 42 U.S.C. § 408(a)(7)(B); and one count of failure to appear on August 24, 2012 under 18 U.S.C. § 3146.

Cruz-Mercedes was arrested in the Dominican Republic on January 25, 2017 and subsequently extradited to the United States. He made his initial appearance on December 1, 2017. Cruz-Mercedes I, 379 F. Supp. 3d at 33.

In anticipation of trial, Cruz-Mercedes moved to suppress all evidence obtained as a result of his June 7, 2012 arrest. Id. He argued that his arrest was unlawful because it was unsupported by probable cause and that the relevant evidence constituted the fruits of an unlawful seizure requiring suppression under Wong Sun v. United States, 371 U.S. 471 (1963). Cruz-Mercedes I, 379 F. Supp. 3d at 33. The district court held a suppression hearing on August 29, 2018. Id.

On September 11, 2018, the district court determined that Cruz-Mercedes was under de facto arrest when he was removed from the McDonald's and questioned by Cronin in the parking lot without a Miranda warning. Id. at 40 & n.15. The district court also found that law enforcement agents lacked probable cause to arrest Cruz-Mercedes until he answered Cronin's interrogation with his true identity and unlawful presence in the country. Id. at 39. The district court suppressed those responses as both fruits of an unlawful arrest under the Fourth Amendment and violative of Miranda under the Fifth Amendment but admitted Cruz-Mercedes's initial false identification as Pedro Colon under the booking

- 9 -

exception to <u>Miranda</u>.[6]   <u>Id.</u> at 40-41 & n.16.   Though also determining that Cruz-Mercedes's booking fingerprints were suppressible as fruit of an unlawful arrest, the district court reasoned that law enforcement inevitably would have arrested and fingerprinted Cruz-Mercedes even without the unlawful arrest and interrogation on June 7.[7]   <u>Id.</u> at 41-42.   The district court therefore admitted the fingerprint evidence pursuant to the doctrine of inevitable discovery.   <u>Id.</u>

On September 13, 2018, Cruz-Mercedes entered a conditional guilty plea, reserving the right to appellate review of the fingerprint evidence's admissibility.   <u>Id.</u> at 29 n.1, 33-34.   On January 9, 2019, the district court sentenced Cruz-Mercedes to imprisonment of 36 months and one day and ordered that he pay restitution of $34,800 and a mandatory assessment of $2,200 and that he be deported following his release.   <u>Id.</u> at 34.   This timely appeal followed.

---

[6] The booking exception permits "questions to secure the biographical data necessary to complete booking or pretrial services" that are "requested for record-keeping purposes only." <u>Pennsylvania</u> v. <u>Muniz</u>, 496 U.S. 582, 601 (1990) (internal quotation marks omitted).

[7] Specifically, the district court determined that admissible evidence would have led agents to investigate Anna Cruz, Maria Martinez, and Betty Sanchez, who in turn would have identified Cruz-Mercedes. <u>Cruz-Mercedes I</u>, 379 F. Supp. 3d at 42. Thus, the district court said that standard database searches then would have revealed Cruz-Mercedes not to be Pedro Colon, giving law enforcement probable cause to arrest Cruz-Mercedes for fraudulent use of a Social Security number and allowing them to obtain his fingerprints lawfully. <u>Id.</u>

### III. Discussion

#### A. The Exclusionary Rule's Applicability to Booking Fingerprints

"In reviewing the denial of a motion to suppress, [this] court accepts the district court's 'factual findings to the extent that they are not clearly erroneous,' and 'review[s] its legal conclusions de novo.'" United States v. Davis, 909 F.3d 9, 16 (1st Cir. 2018) (second alteration in original) (quoting United States v. Sanchez, 612 F.3d 1, 4 (1st Cir. 2010)). We assume arguendo that the district court correctly determined that Cruz-Mercedes was placed under de facto arrest without probable cause when he was removed from the McDonald's. We proceed to review de novo the district court's legal conclusion that the defendant's fingerprints are subject to suppression under the exclusionary rule.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," but "contains no provision expressly precluding the use of evidence obtained in violation of its commands." Arizona v. Evans, 514 U.S. 1, 10 (1995) (citing United States v. Leon, 468 U.S. 897, 906 (1984)); see U.S. Const. amend. IV. The Supreme Court long ago recognized the exclusionary rule in response to the perniciousness of unlawfully obtained evidence. See Weeks v. United States, 232 U.S. 383 (1914)

(adopting the exclusionary rule); Mapp v. Ohio, 367 U.S. 643 (1961) (applying the exclusionary rule to the states).

> The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion.

Wong Sun, 371 U.S. at 485. While that prohibition reaches evidence obtained through a direct Fourth Amendment violation and the derivative "fruit of the poisonous tree," the Court has consistently rejected the presence of a causal relationship between police misconduct and the obtaining of the relevant evidence as a litmus test for the rule's applicability. See Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016); Herring v. United States, 555 U.S. 135, 140 (2009) (citing Illinois v. Gates, 462 U.S. 213, 223 (1983)); Wong Sun, 371 U.S. at 487-88. Rather, the operative inquiry is whether "the interest protected by the constitutional guarantee that has been violated would . . . be served by suppression of the evidence obtained." Strieff, 136 S. Ct. at 2061 (quoting Hudson v. Michigan, 547 U.S. 586, 593 (2006)).

Under the particular factual circumstances of two cases - Hayes v. Florida, 470 U.S. 811 (1985), and Davis v. Mississippi, 394 U.S. 721 (1969) - the Supreme Court has held that the exclusionary rule required suppression of fingerprint evidence. The suppression of fingerprint evidence in both cases

- 12 -

hinged upon the undisputed facts of police officers' obtaining the challenged fingerprints through an "investigative detention," without probable cause, for "investigative purposes" related to a specific crime. Hayes, 470 U.S. at 814-16; see Davis, 394 U.S. at 726-28. The Court's focus on the criminal context and investigatory motivation behind law enforcement's obtaining of the fingerprint evidence in both cases suggests that the exclusionary rule does not block routine booking fingerprints taken for administrative purposes. See Hayes, 470 U.S. at 814-16; Davis, 394 U.S. at 726; United States v. Oscar-Torres, 507 F.3d 224, 231 (4th Cir. 2007).

"Certain routine administrative procedures, such as fingerprinting, photographing, and getting a proper name and address from the defendant, are incidental events accompanying an arrest that are necessary for orderly law enforcement and protection of individual rights." United States v. Olivares-Rangel, 458 F.3d 1104, 1113 (10th Cir. 2006). Routine administrative fingerprinting during booking presumptively is not implicated by the rule that "[t]he indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." United States v. Delgado-Perez, 867 F.3d 244, 256 (1st Cir. 2017) (quoting New York v. Harris, 495 U.S. 14, 19 (1990)); see United States v. Dowdell, 595 F.3d 50, 72 (1st Cir. 2010) ("[B]ooking information

[i]s taken in a routine, nonadversarial setting." (second alteration in original) (quoting United States v. Haughton, 235 F. App'x 254, 255 (5th Cir. 2007))).

The "sole purpose" of the exclusionary rule, the Court has repeatedly held, "is to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236-37 (2011) (citing Herring, 555 U.S. at 141 & n.2; Leon, 468 U.S. at 909, 921 n.22; Elkins v. United States, 364 U.S. 206, 217 (1960)). Exclusion is "not a personal constitutional right," nor one meant to "redress the injury" caused by a Fourth Amendment violation. Id. at 236 (quoting Stone v. Powell, 428 U.S. 465, 486 (1976)). The exclusionary rule therefore "applies only where it 'result[s] in appreciable deterrence.'" Herring, 555 U.S. at 141 (alteration in original) (quoting Leon, 468 U.S. at 909). The inquiry must also consider the "substantial social costs" generated by the exclusionary rule. Davis, 564 U.S. at 237 (quoting Leon, 468 U.S. at 907). The gravity of those costs requires that the rule be "applicable only . . . where its deterrence benefits outweigh its substantial social costs." Strieff, 136 S. Ct. at 2061 (alteration in original) (quoting Hudson, 547 U.S. at 591).

Broad suppression of fingerprints taken for administrative purposes following unlawful arrests would be disproportionately costly. That is because the effect of fingerprinting during routine booking is to enforce the

- 14 -

uncontroversial proposition that "[i]n every criminal case," even those following unlawful arrests, "it is known and must be known who has been arrested and who is being tried." Hiibel v. Sixth Jud. Dist. Ct. of Nev., 542 U.S. 177, 191 (2004).

## B. There is No Basis for Suppression in this Case

Applying these principles here, on this record, we conclude that the fingerprint evidence is not subject to suppression. In reviewing a district court's denial of a motion to suppress, "[w]e assess questions of fact . . . for clear error." United States v. Oquendo-Rivas, 750 F.3d 12, 16 (1st Cir. 2014). Under clear error review, we "view the facts in the light most favorable to the district court's ruling on the motion." United States v. Candelario-Santana, 834 F.3d 8, 18 (1st Cir. 2016). Accordingly, "[s]o long as 'any reasonable view of the evidence supports it,' [this court] will uphold the denial of the motion to suppress." Id. (second alteration in original) (quoting United States v. Molina-Gómez, 781 F.3d 13, 18 (1st Cir. 2015)). Further, this court may "affirm on any ground appearing in the record—including one that the judge did not rely on." United States v. Rivera, 825 F.3d 59, 64 (1st Cir. 2016).

The record of this case shows that the defendant's fingerprints were obtained pursuant to routine booking procedures. The district court reasonably found that Cronin "formally arrested Mr. Cruz-Mercedes for being in the United States unlawfully" based

- 15 -

on statements Cruz-Mercedes made while under de facto arrest. Cruz-Mercedes I, 379 F. Supp. 3d at 32. Cruz-Mercedes's statements about his identity are not suppressible. See United States v. Sanchez, 817 F.3d 38, 44-45 (1st Cir. 2016) (holding the Miranda booking exception covers routine booking questions seeking background information such as the suspect's name); Navarro-Chalan v. Ashcroft, 359 F.3d 19, 22 (1st Cir. 2004). Cruz-Mercedes's statement of his unlawful presence in the United States, which the record indicates was freely made and not a result of the questions or actions of law enforcement, is also not subject to suppression here. See Sanchez, 817 F.3d at 44 (stating that freely made statements are admissible under Miranda); Herring, 555 U.S. at 141 (holding that the exclusionary rule applies only where it "result[s] in appreciable deterrence" (alteration in original) (quoting Leon, 468 U.S. at 909)); Oscar-Torres, 507 F.3d at 231.

Cruz-Mercedes's admitted unlawful presence rendered him deportable. See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1).[8] Cronin was authorized to administratively arrest Cruz-Mercedes on that basis. See id. § 1357(a)(2)[9]; 8 C.F.R. § 287.5(c) (2012). It is

---

[8] Section 1182(a)(6)(A)(i) provides that "[a]n alien present in the United States without being admitted . . . is inadmissible." Section 1227(a)(1) renders deportable aliens who were inadmissible at entry or are present in the United States in violation of law.

[9] Section 1357(a)(2) empowers an immigration officer "to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or

- 16 -

undisputed, and the district court reasonably found, that Cronin fingerprinted Cruz-Mercedes at the Boston HSI office pursuant to routine immigration processing.  Cruz-Mercedes I, 379 F. Supp. 3d at 32.

Cruz-Mercedes does not and cannot successfully argue on this record that his fingerprints were obtained for any purpose other than routine booking.  Accordingly, the fingerprint evidence cannot be suppressed under the exclusionary rule.  Consequently, this case does not implicate the holdings of some of our sister circuits recognizing factual circumstances that render booking fingerprints suppressible.  See, e.g., Oscar-Torres, 507 F.3d 224 (holding booking fingerprints are suppressible only where law enforcement purposefully exploits an illegal arrest to obtain them in furtherance of a criminal investigation); Olivares–Rangel, 458 F.3d 1104 (same); United States v. Guevara-Martinez, 262 F.3d 751, 755-56 (8th Cir. 2001) (requiring suppression of fingerprints "obtained . . . by exploiting [defendant's] unlawful detention" where there was "no evidence that the fingerprints were obtained as a matter of course through routine booking procedures").[10]  We

_____

regulation made in pursuance of law regulating the admission . . . of aliens," and "to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest."

[10] The Ninth Circuit has taken up this question and ruled along similar lines.  See United States v. Garcia-Beltran, 389

- 17 -

need not and do not resolve these questions in the instant case.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Cruz-Mercedes's motion to suppress the fingerprint evidence.

F.3d 864, 868 (9th Cir. 2004) (requiring suppression of fingerprints obtained following the illegal arrest in pursuit of a criminal investigation unless they were obtained "by 'means sufficient to have purged the taint of the initial illegality'" (quoting Guevara-Martinez, 262 F.3d at 755)); but see United States v. Ortiz-Hernandez, 427 F.3d 567 (9th Cir. 2005) (suppressing fingerprints obtained following an illegal arrest under Garcia-Beltran but compelling defendant to submit to rebooking and fingerprinting upon new federal criminal charge).